UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JULIAN M. KNIGHT and ANSHUMAN CHANDRA, <br><br> Plaintiffs, <br><br> -v- <br><br> STANDARD CHARTERED BANK, STANDARD CHARTERED BANK, DUBAI, and STANDARD CHARTERED BANK, NEW YORK, <br><br> Defendants. | 19 Civ. 11739 (PAE) <br><br> OPINION & ORDER |

---

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Julian Knight ("Knight") and Anshuman Chandra ("Chandra") bring this claim for unlawful retaliation in violation of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3730, and the New York False Claims Act, N.Y. State Fin. Law § 191 ("NYFCA"). Plaintiffs allege that after they sued defendant Standard Chartered Bank ("SCB") and two of its branches under the FCA and NYFCA for evading U.S. sanctions against Iran, SCB retaliated against them. Defendants now move to dismiss for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively, as well as based on *forum non conveniens*. The Court holds that it lacks personal jurisdiction over the defendants on the federal FCA claim. The Court declines to exercise supplemental jurisdiction over the NYFCA claim, and therefore dismisses the complaint in its entirety, without prejudice.

I.      **Background**

A.      **Factual Background**[1]

The Court incorporates by reference the factual background set out in its July 2, 2020

Opinion and Order.  *See United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank*,

No. 18 Civ. 11117 (PAE), 2020 WL 3619050 (S.D.N.Y. July 2, 2020).  The Court provides

background here only as needed to resolve the pending motion to dismiss.

1.      **Parties**

SCB is a public limited liability company incorporated in the United Kingdom and

headquartered in London.  FAC ¶ 28.  SCB has a number of branches, including in Dubai ("SCB

Dubai") and New York ("SCB NY").  *Id.* ¶¶ 29–30.

Knight is a citizen of and resides in the United Kingdom.  *Id.* ¶ 20.  SCB hired Knight in

2008.  In 2009, he became SCB's Global Head of Transaction Banking Foreign Exchange Sales.

*Id.* ¶ 26.

Chandra is a citizen of India.  *Id.* ¶ 15.  In August 2011, he was hired by SCB.  He served

as SCB Dubai's Head of eCommerce Client Services.  *Id.* ¶¶ 17, 47.

2.      **Plaintiffs' Reporting of Misconduct at SCB**

The FAC alleges that in 2011, Knight first reported to SCB issues with its procedures to

guard against money laundering, including as aimed at circumventing international sanctions

against Iran.  *Id.* ¶ 9.  In 2012, Knight and a co-worker, Robert Marcellus, a relator in the related

---

[1] The Court's account of the factual allegations is drawn from the First Amended Complaint, Dkt. 21 ("FAC").  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials.  *See Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).

*qui tam* action, *United States ex rel. Brutus Trading, LLC v. Standard Chartered Bank*, became aware of a New York-based investigation into SCB for violating Iranian sanctions.  *Id.* ¶ 10. Knight and Marcellus approached federal and state financial regulators with information about SCB's handling of money laundering.  *Id.*  They also filed a *qui tam* action under the FCA and the NYFCA.  It alleged that SCB had misled the Government in negotiating a deferred prosecution agreement in 2012, and that SCB had continued to engage in conduct violating Iranian sanctions notwithstanding its pledge to the Government to cease to do so.  *United States ex rel. Brutus Trading, LLC*, 2020 WL 3619050, at *1.  In May 2013, Chandra contacted Knight and offered to provide him records of SCB deals with customers with links to Iran.  FAC ¶ 12. Between May 2013 and December 2016, Chandra provided such information to federal and New York state investigators.  *Id.*

In August 2013, the Government informed Knight and Marcellus that it would decline to intervene in the case.  *See United States ex rel. Brutus Trading, LLC*, 2020 WL 3619050 at *1. In November 2018, Knight and Marcellus, acting through an entity they named "Brutus Trading, LLC," refiled the *qui tam* complaint.  The Government again declined to intervene.  *Id.* at *2. On November 21, 2019, after the initial complaint had been twice amended, the Government moved to dismiss.  *Id.*  In July 2, 2020, this Court granted the motion to dismiss, after finding that the Government had "proffered 'a valid government purpose' for seeking to dismiss the *qui tam* action—namely, the early termination of actions as to which the Government has determined that the factual allegations are meritless—and ha[d] articulated a more than 'rational relation between dismissal and accomplishment of th[at] purpose."  *Id.* at *3 (quoting *United States ex rel., Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998)). Brutus Trading has appealed.  Its appeal is pending.  *See* No. 18 Civ. 11117 (PAE), Dkt. 66.

### 3.     SCB's Retaliation Against Plaintiffs

The FAC pleads that the three named defendants—SCB and its Dubai and New York branches—retaliated against Knight and Chandra by terminating them without reasonable cause, discrediting them with other employers, withholding benefits from Chandra, discriminating against them, and threatening them and their families.  FAC ¶ 13.  It pleads that SCB gave Knight a notice of termination on October 10, 2011, and terminated him on January 9, 2012.  *Id.* ¶ 44.  Since then, the FAC alleges, defendants have discredited Knight and prevented him from finding employment in the financial services field.  *Id.* ¶ 78.  The FAC also alleges that, on December 7, 2016, SCB told Chandra that his position had become redundant and his employment would be terminated, and that, on April 8, 2017, it terminated him.  *Id.* ¶ 71.

### B.     Procedural History of This Action

On December 23, 2019, Knight and Chandra filed the initial complaint, with subject matter jurisdiction as to the plaintiffs' claim under the FCA, 21 U.S.C. § 3730(h), based on the presence of a federal question, *see* 28 U.S.C. § 1331; FAC ¶ 32, and subject matter jurisdiction over Chandra's and Knight's claims under NYFCA based on the Court's diversity jurisdiction, 28 U.S.C. § 1332(a)(2), and the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a).  On May 1, 2020, defendants filed a motion to dismiss.  Dkt. 13.  On May 5, 2020, the Court issued an order, giving plaintiffs until May 22, 2020, to file any amended complaint.  Dkt. 19.  Plaintiff then filed the First Amended Complaint ("FAC"), Dkt. 21, asserting two counts.  Count One alleges unlawful retaliation against plaintiffs in violation of the FCA, 21 U.S.C. § 3730.  Count Two alleges unlawful retaliation against plaintiffs in violation of the NYFCA, N.Y. State Fin. Law §191.

On June 19, 2020, defendants moved to dismiss.  Dkt. 25.  Their supporting memorandum of law, Dkt. 26 ("Def. Mem."), argued that personal jurisdiction was lacking under

Rule 12(b)(2), that the FAC did not state a claim under Rule 12(b)(6), and that dismissal was merited based on *forum non conveniens*.  On July 17, 2020, plaintiffs filed a memorandum in opposition.  Dkt. 29 ("Pl. Opp'n").  On August 4, 2020, the defendants filed a reply.  Dkt. 30 ("Reply").

## II.    Applicable Legal Standards: Personal Jurisdiction

### A.    Requirements

There are three requirements for a federal court to lawfully exercise personal jurisdiction. "First, the plaintiff's service of process upon the defendant must have been procedurally proper."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective."  *Id.*  Third, "an exercise of jurisdiction under these laws [must be] consistent with federal due process requirements."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).  *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

#### 1.    Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quotation omitted).  Federal Rule of Civil Procedure 4 governs the content, issuance, and service of a summons.  *Id.*  Under Rule 4(h), unless federal law provides otherwise or the defendant has filed a waiver of service, a corporation must be served in one of two ways.  It may be served "in a judicial district of the United States . . . in the manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general

agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1).  Or, it may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).

### 2.    Statutory Basis

A court must also have a statutory basis for asserting personal jurisdiction over each defendant based on the long-arm statute of the state in which it sits.  *See* 31 U.S.C. § 3732(a) ("Any action under section 3730 [the FCA] may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."); *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015).

New York's long-arm statute provides for general jurisdiction, *see* New York Civil Practice Law and Rules ("C.P.L.R.") § 301, which may arise from a foreign defendant's overall course of business in the state.  Such jurisdiction is proper when "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted."  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (cleaned up); *see also MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 754–55 (S.D.N.Y. 2020).

It also provides for specific jurisdiction, *see* C.P.L.R. § 302(a)(1), which may arise depending on the foreign defendant's contacts with the state in connection with the cause of action.  The Court's primary consideration under C.P.L.R. § 302(a)(1) is "[t]he quality of the defendants' New York contacts."  *Licci*, 673 F.3d at 62 (quotation omitted).  However, § 302(a)(1) permits personal jurisdiction under narrower conditions than does the Due Process

Clause under the U.S. Constitution.  Thus, because "the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances [than] N.Y. C.P.L.R. § 302, . . . a foreign defendant meeting the standards of § 302 will satisfy the due process standard."  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008); *See United States v. Montreal Tr. Co.*, 358 F.2d 239, 242 (2d Cir. 1966) ("New York in enacting § 302 has not sought to obtain full in personam jurisdiction over non-domiciliaries who transact business within its boundaries.  Rather, New York has limited itself to jurisdiction only in those 'causes of action' arising out of activity conducted within the state.").  Accordingly, if the Due Process Clause does not permit the exercise of jurisdiction, neither will C.P.L.R. § 302.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.").

### 3.    Due Process

Once a *prima facie* showing of a statutory basis for jurisdiction has been made, the plaintiff must "demonstrate that the exercise of jurisdiction comports with due process."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81–82 (2d Cir. 2018); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The constitutional analysis under the Due Process Clause consists of two separate components: the "minimum contacts" inquiry and the "reasonableness" inquiry.  *Licci*, 673 F.3d at 60 (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

The "minimum contacts" inquiry examines "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  *Id.*  The Court considers these contacts in totality, with the crucial question being whether the defendant has

"purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" such that the defendant "should reasonably anticipate being haled into court there."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King*, 471 U.S. at 474–75).  To satisfy this minimum-contacts inquiry, the Court "recognize[es] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, --- S. Ct. ---, 2021 WL 1132515, at *4 (U.S. Mar. 25, 2021). General jurisdiction exists when a defendant is "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011).  In "the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile. . . .  And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business."  *Ford Motor Co.*, 2021 WL 1132515, at *4 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014)).  Specific jurisdiction exists only if there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  For specific jurisdiction to exist, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Ford Motor Co.*, 2021 WL 1132515, at *4 (cleaned up); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014).

The "reasonableness" inquiry examines "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Licci*, 673 F.3d at 60 (quoting *Int'l Shoe*, 326 U.S. at 216).  The Court considers: "(1) the

burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe*, 616 F.3d at 164–65 (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113–14 (1987)).

### B.    Burden of Proof

On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quotation omitted). Where, as here, jurisdictional discovery has not been conducted, to defeat a motion to dismiss, the plaintiff need only put forth "legally sufficient allegations of jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

### III.   Discussion

Defendants argue that the FAC should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), for failure to state a claim under Rule 12(b)(6), and on the basis of *forum non conveniens*.

At the threshold, the Court must determine whether it has subject matter and personal jurisdiction over this action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95

(1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))); *In re Rationis Enters., Inc. of Pan.*, 261 F.3d 264, 267–68 (2d Cir. 2001) (same); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).  As between these jurisdictional inquiries, there is no mandatory sequence.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (While "jurisdictional question must ordinarily precede merits determinations in dispositional order," "there is no mandatory sequencing of jurisdictional issues," and, a court, in appropriate circumstances, "may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction." (quotations and citation omitted)); *Steel Co.*, 523 U.S. 83, 115 (1998) (Stevens, J. concurring) ("We have routinely held that when presented with two jurisdictional questions, the Court may choose which one to answer first."); *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 320 (S.D.N.Y. 2013) ("[A] court is free to 'choose among threshold grounds' for dismissing an action so long as none involve 'a judgment on the merits.'" (quoting *Sinochem Int'l Co.*, 549 U.S. at 431 (2007))).

The Court has determined in this case to consider first personal jurisdiction, because the absence of such jurisdiction over the one proper defendant, SCB,[2] disposes of plaintiffs' federal

---

[2] Plaintiffs also sued SCB's Dubai and New York branches, but as defendants explain, these branches are "not separate legal entities capable of being sued."  Def. Mem. at 9; *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC,* 692 F.3d 42, 51 (2d Cir. 2012) (holding that where a New York branch of a foreign bank "is not separately incorporated, [it] has no legal identity separate from [the parent Bank]"); *Greenbaum v. Handlesbanken*, 26 F. Supp. 2d 649, 652 (S.D.N.Y. 1998) (Sotomayor, J.) ("[T]he law seems fairly well-settled that the domestic branch of a foreign bank is not a separate legal entity under either New York or federal law.").  Plaintiffs do not contest the point, and indeed their Complaint implicitly concedes it.  *See* FAC ¶ 31 ("Under federal law, branches of foreign banks operating within the United States must be approved by the Federal Reserve and are legal extensions of the foreign bank, not freestanding

claim under the FCA.  The Court then considers whether, as to the remaining claim, under the NYFCA, there is a freestanding basis to exercise subject-matter jurisdiction.

### A. Personal Jurisdiction

SCB argues that plaintiffs have failed to make a *prima facie* showing that personal jurisdiction exists, and cannot demonstrate minimum contacts sufficient to establish either specific or general personal jurisdiction and thereby to satisfy due process.  *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673–74; *Charles Schwab Corp.*, 883 F.3d at 81–82.  The Court begins by determining whether personal jurisdiction exists under the Due Process Clause, because "the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances" than C.P.L.R § 302, such that if there is no personal jurisdiction under the former, there also is none under the latter.  *Energy Brands Inc*, 571 F. Supp. 2d at 469; *see D.H. Blair & Co.*, 462 F.3d at 105.

### 1. There Is No General Personal Jurisdiction Over SBC

Plaintiffs predominantly argue that the Court has general personal jurisdiction over SCB. They declare: "This Court's general jurisdiction is the complete answer to SCB's argument for dismissal based on a lack of personal jurisdiction."  Pl. Opp'n at 20.

The case law is, however, otherwise.  SCB is a United Kingdom-based Bank, with a principal place of business in London.  Like most banks, it has branches elsewhere, including in New York.  Banks meeting this paradigm, under settled case law, are *not* subject to the general jurisdiction of the United States.  "[A]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of

---

entities.").

business." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quotations omitted). A foreign corporation is subject to general jurisdiction in a state only if the "foreign corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 119.

Plaintiffs do not plead and have not otherwise pointed to facts responsive to this standard. Other than to conclusorily so state, plaintiffs do not explain why SCB is "at home" in New York, or even plead that SCB's New York branch conducts a significant portion of SCB's business. And cases in this Circuit have consistently rejected the claim that banks with similar footprints— incorporated and with principal places of business abroad, but with branches in the United States —are "at home" here. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (holding that court has no general personal jurisdiction over a bank where it "has branch offices in the forum, but is incorporated and headquartered elsewhere"); *Motorola Credit Corp. v. Uzan*, 132 F. Supp. 3d 518, 521 (S.D.N.Y. 2015) ("The bank in *Gucci* [*Am., Inc.*, 768 F.3d at 135], Bank of China ('BOC'), was incorporated and had its principal place of business abroad. Moreover, 'BOC [had] only four branch offices in the United States and only a small portion of its worldwide business [was] conducted in New York.' The Second Circuit concluded that the bank was not 'at home' in New York and could not be subjected to general jurisdiction here." (quoting *id.*)); *Tiffany (NJ) LLC, Tiffany & Co. v. China Merchs. Bank*, 589 F. App'x 550, 553 (2d Cir. 2014) (summary order) ("Banks were not subject to general jurisdiction in the district court. The Banks' sites of incorporation and principal places of business are all outside of the United States. And there is no basis on which to conclude that the Banks' contacts in New York are so 'continuous and systematic,' judged against their national and global activities, that they are 'essentially at home' in that state." (quoting *Daimler AG*, 134 S. Ct. at 761)), *as*

*amended* (Sept. 23, 2014); *Pfaff v. Deutsche Bank AG*, No. 20 Misc. 25 (KPF), 2020 WL 3994824, at *5 (S.D.N.Y. July 15, 2020) (finding no general personal jurisdiction where the defendant "Bank is headquartered in Germany, has its principal place of business in Germany, and is organized under the laws of the Federal Republic of Germany"); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 321 (S.D.N.Y.) (finding no general personal jurisdiction "as none of the Banks are incorporated or headquartered in the United States, as all of the Banks conduct only a small amount of business here relative to their operations abroad, and as each has only a single branch in New York"), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018).

In arguing that SCB is subject to general jurisdiction in New York, plaintiffs instead deploy sound-bites from Supreme Court and Second Circuit cases.  They first cite *Walden* and *Burger King Corp.*, declaring that SCB has a "substantial connection with the forum state," Pl. Opp'n at 20 (quoting *Walden*, 571 U.S. at 284), that arose from "contacts that the 'defendant himself' creates with the forum state," *id.* (quoting *Burger King Corp.*, 471 U.S. at 475).  Those cases, however, addressed the minimum contacts necessary for specific, not general, jurisdiction. Plaintiffs next extract a quote from the Second Circuit's decision in *In re Terrorist Attacks*. They declare that SCB has "continuous and systematic general business contacts" with New York City.  *See id.* at 20–21 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674). But plaintiffs do not cite facts so demonstrating.  And *In re Terrorist Attacks* set out the operative test for general jurisdiction as above:  Whereas "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  714 F.3d at 674 (quoting *Goodyear*, 564 U.S. at 924).  Plaintiffs do not explain why SCB, based on its branches, is any more "at home" in New York than the Bank of China in *Gucci* or the bank in *Tiffany*, each

of which also were based abroad with at least one branch in New York.

Plaintiffs' final argument for general jurisdiction is that "SCB is required by New York law to obtain a license and subject itself to the jurisdiction of the State in order to provide banking and financial services in the State."  Pl. Opp'n at 21 (citing N.Y. Banking Law §§ 200 *et seq*.).  That statute, however, gives rise only to specific jurisdiction.  *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 Civ. 5263 (AKH), 2017 WL 3600425, at *4 (S.D.N.Y. Aug. 18, 2017) ("By its express terms, this statute limits a foreign bank's consent to suits 'arising out of a transaction with its New York agency or agencies or branch or branches,' and is thus relevant only to specific jurisdiction, not general jurisdiction.  Courts have been virtually unanimous in concluding that this statute does not provide for general jurisdiction." (citations omitted)); N.Y. Banking Law § 200 ("upon whom all process in any action or proceeding against it on a cause of action arising out of a transaction with its New York agency or agencies or branch or branches, may be served with the same force and effect as if it were a domestic corporation and had been lawfully served with process within the state"); *see e.g.*, *Sullivan v. Barclays PLC*, No. 13 Civ. 2811 (PKC), 2017 WL 685570, at *39 (S.D.N.Y. Feb. 21, 2017); *In re: LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *11 (S.D.N.Y. Mar. 31, 2015).[3]  Plaintiffs have not cited authority that this provision of state banking law gives rise to general jurisdiction.

---

[3] Plaintiffs also argue that SCB is subject to service of process in New York, Pl. Opp'n at 21 (citing N.Y. Banking Law § 207; 31 U.S.C. § 3732(a); C.P.L.R. § 302(a)(1)).  Defendants, however, have not claimed a defect in service of process.

### 2.    Specific Personal Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation.  For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden*, 571 U.S. at 283–84 (quotations and citations omitted).  In its most recent personal jurisdiction decision, rendered earlier this month, the Supreme Court reiterated this requirement.  It recalled that, less than four years earlier, it had found specific jurisdiction lacking in *Bristol-Myers Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1782–83 (2017), "because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims."  *Ford Motor Co.*, 2021 WL 1132515, at *4.

Here, plaintiffs' federal claim, under the FCA, is of retaliatory action by SCB against Knight and Chandra.  To establish such a claim, a plaintiff must: "show that (1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity."  *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017); *Dhaliwal v. Salix Pharm., Ltd.*, 752 F. App'x 99, 100 (2d Cir. 2019) (summary order) (same); *United States v. Empire Educ. Corp.*, 959 F. Supp. 2d 248, 256 (N.D.N.Y. 2013) ("[The plaintiff] must prove that he was 'discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by [him] . . . in furtherance of an action under this section or other efforts to stop 1 or more violations' of the FCA." (quoting 31 U.S.C. § 3730(h)(1))); *United States ex rel.*

*Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006) (same).[4]

The issue as to specific jurisdiction therefore is whether the contacts of the defendant, SCB, in connection with its alleged adverse action against plaintiffs in retaliation for protective activity, *United States ex rel. Chorches for Bankr. Est. of Fabula*, 865 F.3d at 95, "create[d] a substantial connection with [New York]," *Walden*, 571 U.S. at 284.  Plaintiff must demonstrate such contacts as to each claim (*i.e.*, Chandra's and Knight's).  *See Charles Schwab Corp.*, 883 F.3d at 83–84 ("A plaintiff 'must establish the court's jurisdiction with respect to each claim asserted.'" (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004))).  Thus, as to each claim, there must be "suit-related conduct [that] create[s] a substantial connection with [New York]." *Walden*, 571 U.S. at 284.

The vast majority of retaliatory acts the FAC alleges however, occurred abroad.  Both plaintiffs are foreign nationals.  Each was employed at a foreign branch of a foreign bank in a foreign country.  Nonetheless, plaintiffs point to five paragraphs in the FAC that, they contend, demonstrate that "specific retaliatory conduct by SCB within New York to also support specific personal jurisdiction."  Pl. Opp'n at 21 (citing FAC ¶¶ 62–64, 74, 79).

A close review of these paragraphs, however, does not reveal sufficient "suit-related conduct" in New York to give rise to a substantial connection with this forum.  The Court addresses each FAC paragraph on which plaintiffs rely in turn.

---

[4] The NYFCA, N.Y. State Fin. Law § 191, "follows the federal False Claims Act," and thus New York courts "look toward federal law when interpreting the New York act."  *Dhaliwal*, 752 F. App'x at 100 (quoting *State of New York ex rel. Seiden v. Utica First Ins. Co.*, 96 A.D.3d 67, 71 (1st Dep't 2012)).  The analysis of a retaliation claim under the FCA "thus equally applies to [a plaintiff's] NYFCA claims." *Id.*

FAC ¶¶ 62–63 are about federal investigations into SCB based on information Knight and his co-worker, Marcellus, supplied.  At a February 2013 meeting with investigators and SCB, Knight alleges, federal and state investigators met with an SCB official and counsel.  At that meeting, the federal investigators failed to properly redact Knight's name, leading SCB to discover that Knight had provided information to the investigators.  Also at the meeting, SCB "attacked Mr. Knight's character and reputation" by claiming that he "had been a low-level SCB employee lacking understanding of SCB's systems and practices," accusing him of having had an affair, and stating that "Mr. Knight was a fantasist and that no one would hire him in the Middle East after his departure from SCB."  *Id.*  ¶ 63.  Those allegations assist Knight's FCA claim, in that they substantiate SCB's awareness that Knight had engaged in protected activity, and therefore its motive thereafter to retaliate against him.  *See* 31 U.S.C. § 3730(h)(1); *United States ex rel. Chorches for Bankr. Est. of Fabula*, 865 F.3d at 95 (to state FCA retaliation claim, plaintiff must plead that "employer took adverse action against him because he engaged in the protected action").  These paragraphs do not, however, assist Knight in establishing specific jurisdiction, because the FAC alleges that the February 2013 meeting took place in Dubai, FAC ¶ 62, and there is no allegation that any SCB attendee at the meeting was even based in the United States.

With these two paragraphs put aside, the New York-related allegations reduce to two paragraphs relating to Knight and one to Chandra.

***Knight***:  Paragraph 79 of the FAC alleges:

[A]fter Mr. Knight was forced out of SCB by the Defendants, he secured employment in the New York office of Société Générale . . . .  In March 2014, Julio Rojas, the CEO of SCB NY, from his office in New York, contacted the Head of Compliance at Société Générale New York in the latter's New York office to inform him that Mr. Knight was not to be trusted.  This resulted in intense scrutiny of Mr. Knight by the Compliance Department that humiliated him and made his

> continued work at Société Générale untenable, requiring him to leave that
> employment.  Mr. Knight was forced to resign in May 2014 after just one year in
> position and following twice weekly interrogative meetings with Compliance.

*Id.* ¶ 79.  These New York events, however, well postdate Knight's employment at SCB.  The

FAC makes that clear, alleging that "[i]n retaliation for his uncovering and disclosing SCB's

illicit schemes, SCB gave Plaintiff Knight notice of termination on October 10, 2011," and he

was "forced out" a few months later.  *Id.*  ¶¶ 27, 44.  Thus the only incident on which personal

jurisdiction could rest occurred some three years after Knight was terminated.  *Id.* ¶ 79.

SCB's post-termination conduct, however disreputable as alleged, cannot provide the

necessary connection to New York for specific personal jurisdiction.  That is because an FCA

retaliation claim must be based on actions that occurred during the plaintiff's employment.

*See* 31 U.S.C. § 3730(h)(1) (providing cause of action for retaliation only against an "employee,

contractor, or agent");[5] *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 306 (S.D.N.Y. 2014)

("Additionally, even if the refusal to pay him was retaliatory, this allegation would not state an

FCA retaliation claim because, as plead in the Complaint, it occurred after Plaintiff was

terminated." (citing 31 U.S.C. § 3730(h)(1)); *Potts v. Ctr. for Excellence in Higher Educ., Inc.*,

244 F. Supp. 3d 1138, 1143 (D. Colo. 2017) ("The overwhelming majority of courts that have

considered the issue have found that § 3730(h)(1) does not apply to post-employment

retaliation[.]"), *aff'd*, 908 F.3d 610 (10th Cir. 2018); *Taul ex rel. United States v. Nagel Enters.,

Inc.*, No. 14 Civ. 61 (VEH), 2017 WL 4956422, at *4 (N.D. Ala. Nov. 1, 2017) ("This Court,

like many, is persuaded that the most natural reading of § 3730(h) is that it does not create a

claim for post-termination retaliation."); *Master v. LHC Grp. Inc.*, No. 07 Civ. 1117, 2013 WL

---

[5] In this respect, the text of the New York FCA diverges from its federal counterpart.  *See* N.Y.
State Fin. Law § 191 (allowing claims to be brought by "[a]ny current or former employee,
contractor, or agent . . .").

786357, at *7 (W.D. La. Mar. 1, 2013) ("the FCA does not provide a remedy for post-employment retaliation"; "all courts to have addressed this issue have similarly held that § 3730 does not provide a remedy for post-employment retaliation" (collecting cases)). Because the only event in New York that the FAC cites in connection with Knight postdates the period when SCB could be liable for retaliating against him and thus does not qualify as "suit-related conduct," personal jurisdiction does not lie in New York for Knight's FCA claim. *See Walden*, 571 U.S. at 284 (requiring "suit-related conduct" that "create[s] a substantial connection with the forum State.").

*Chandra*: The FAC alleges that in September 2013, Chandra learned from an FBI agent that his identity had been disclosed to SCB's counsel. Paragraph 64 of the FAC alleges that after this disclosure:

> [Mr. Chandra] was subjected to harassment, bullying and discriminatory treatment by SCB personnel, particularly Zeeshan Khan, his supervisor, and Steven Tong of SCB NY, another SCB supervisor to whom Mr. Chandra reported. Mr. Tong's retaliatory actions occurred in New York. Despite having received exemplary performance reviews . . . in previous years, Mr. Chandra was given a highly negative performance review . . . in March 2014 for the year 2013. This amounted to a drop of seven levels on the SCB rating scale. He filed a formal grievance against Mr. Khan regarding that review and other discriminatory treatment. After senior management in the SCB Dubai branch realized that he was cooperating with the investigation, they reacted to him with noticeable hostility. . . .

FAC ¶ 64. This paragraph, however, also does not allege any specific retaliatory conduct against Chandra in New York. It identifies one SCB New York employee, Steven Tong, whom, it states, subjected Chandra to "harassment, bullying and discriminatory treatment," adding that "Mr. Tong's retaliatory actions occurred in New York," *id.* But these are conclusory, non-specific allegations. The one specific action alleged in this paragraph, Chandra's negative performance review, although not attributed to any employee by name, in context appears to have been made by supervisor Khan, not Tong, as reflected in the allegation that Chanda "filed a formal

grievance against Mr. Khan regarding that review." *Id.* The FAC does not allege any nexus between Khan and New York.

Devoid of particulars, the FAC's conclusory sentence about Tong must be set aside. The burden is plaintiff's to establish jurisdiction, and "allegations or evidence of activity constituting the basis of jurisdiction must be non-conclusory and fact-specific." *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 290 (S.D.N.Y. 2019). "[C]onclusory statements—without any supporting facts" are not enough. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (noting need for "factual specificity necessary to confer jurisdiction"). And courts are not to resolve "'argumentative inferences in the plaintiff's favor' or 'accept as true a legal conclusion couched as a factual allegation.'" *Contant*, 385 F. Supp. 3d at 290 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673).

The only specifically pled conduct alleged as to Chandra occurring in New York is alleged in paragraph 74:

> After Mr. Chandra received notice of his termination but months before the last day of his employment, Steven Tong at SCB NY prematurely removed his name from SCB's recordkeeping system, which utterly frustrated Mr. Chandra's attempts to find other employment. It was the prompting for a prospective employer, Bloomberg's Dubai office, to terminate any contact with Mr. Chandra abruptly after a series of positive interviews and communications between Mr. Chandra and Bloomberg's human relations department in 2017.

FAC ¶ 74. That act is cognizable in the specific jurisdiction analysis. But it stands alone as the one retaliatory act against Chandra in this forum.

For several reasons, this act, of prematurely removing Chandra's name from SCB's recordkeeping system, does not supply the requisite "'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford Motor Co.*, 2021 WL 1132515, at *7 (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S.

408, 414 (1984)).  It is a single act by a single person.  It occurred three years after SCB's

alleged motive to retaliate against Chandra arose, when it, as alleged, learned that Chandra was

involved in the reports to the federal agents.  The connection between SCB's motive to retaliate

and Tong's is thus attenuated.  And all other acts in the multi-year retaliatory saga alleged by

Chandra occurred abroad, where he and SCB were based.  *See* FAC ¶ 64 ("After senior

management in the SCB Dubai branch realized that he was cooperating with the investigation,

they reacted to him with noticeable hostility"); *id.* ("Mr. Khan and Declan Clements took Mr.

Chandra to aside to discuss the future of his team, suggesting that it might be shut down.  This

was an obvious attempt to pressure him to leave SCB."); *id.* ¶ 65 (noting that Chandra received

telephone calls "threatening him for assisting the investigation" from October 2014, until 2020

but not alleging that any originated in the United States); *id.* ¶ 66 ("Mr. Khan's secretary advised

Mr. Chandra privately in March or April 2015 that Mr. Khan had been devising a pretext for

some time to fire Mr. Chandra."); *id* ¶ 67–68 (Chandra was given an award by then Group

Chairman Sir John Peace in London in 2015, but never "received the six-month mentorship" that

was supposed to go with it "despite his repeated requests."); *id.* ¶ 69 ("While Mr. Chandra was in

London for the award ceremony, he was again warned by Mr. Khan's former secretary, who had

recently left Mr. Khan's team, that Mr. Khan continued to plan to fire him."); *id.* ¶ 71 ("Despite

past assignments of Mr. Chandra to its London and Singapore branches—often with notice of

only hours—to discharge essentially the same functions that he had been assigned in the Dubai

branch, he was never given consideration for these London and Singapore positions."); *id*. ¶ 72

("Mr. Chandra was a finalist for a sales position. . . .  A visit to SCB Dubai by Chris Allington,

Zeeshan Khan's immediate line manager, and Mr. Allington's meeting with Morad Mahlouji, the

Global Markets Head for the Middle East, caused Mr. Mahlouji to change his previous favorable

stance with respect to hiring Mr. Chandra . . . ."); *id.* ¶ 73 ("SCB refused to give Mr. Chandra

severance pay . . . ; refused to assume responsibility for the credit card expenses incurred by Mr.

Chandra; and declined to relieve him of his financial obligation on his automobile lease, thus

saddling Mr. Chandra with overwhelming debt that he has been unable to repay and that made

his departure from Dubai problematic under local law.").  In that context, the early removal from

records of a name of an employee whose termination had been noticed, even assuming a

retaliatory motive for the removal, is too scant to make out a "substantial connection with" New

York.  *Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process,

the defendant's suit-related conduct must create a substantial connection with the forum State.");

*Burger King Corp.*, 471 U.S. at 475 n.18 ("[E]ven a single act can support jurisdiction," but it

must "create[] a substantial connection with the forum.").

      Chandra's FCA claim against SCB is not the rare case in which a single act related to a

forum is sufficient to establish personal jurisdiction.  Rather, here, as in other cases in which

single or limited acts in the forum state have been held too tangential, "'the[] nature and quality

and the circumstances of the[ act's] commission' create only an 'attenuated' affiliation with the

forum."  *Burger King Corp.*, 471 U.S. at 475 n.18 (citing *Int'l Shoe Co.*, 326 U.S. at 318); *see*

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *see, e.g.*, *Herlihy v.*

*Sandals Resorts Int'l, Ltd.*, 795 F. App'x 27, 29–30 (2d Cir. 2019) (finding conduct of foreign

defendant, a resort abroad, "not sufficiently connected to" the forum state to confer specific

jurisdiction for a tort occurring at the resort, notwithstanding defendant's marketing and

advertising in the forum state by third-party marketing company); *SPV Osus Ltd.*, 882 F.3d

at 345 ("At bottom, the contacts alleged by [plaintiff] between the UBS Defendants, the forum

and the litigation amount to a handful of communications and transfers of funds. These limited

contacts are insufficient to allow the exercise of specific personal jurisdiction over the UBS

Defendants."); *Hau Yin To v. HSBC Holdings PLC*, No. 15 Civ. 3590 (LTS), 2017 WL 816136,

at *5 (S.D.N.Y. Mar. 1, 2017) ("[C]ommunications with and payments to New York merely to

ensure compliance with contract terms negotiated and executed outside of New York do not

'project' a defendant into the state sufficiently to confer" specific jurisdiction over foreign

defendants.).  As in such cases, the "isolated act" here would make "the reasonable foreseeability

of litigation in the forum . . . substantially diminished." *Burger King Corp.*, 471 U.S. at 475 n.18

(quotation omitted).  Chandra's work for SCB was abroad, and the vast majority of the

retaliatory actions that the FAC alleges also occurred aboard.  The singular act of modifying his

employment records before, rather than upon, his termination date, does not provide the requisite

substantial suit-related contacts to confer personal jurisdiction over SCB.  *See Bristol-Myers*, 137

S. Ct. at 1781 ("What is needed—and what is missing here—is a connection between the forum

and the specific claims at issue").

The Court accordingly holds that it has neither general nor specific personal jurisdiction

over SCB with respect to either plaintiff's FCA claim.  Despite an opportunity to amend so as to

fortify their pleadings on this point, plaintiffs have not pled the "minimum contacts" necessary.

*See Licci*, 673 F.3d at 60.  The Court therefore must dismiss, without prejudice, plaintiffs' FCA

claims, pursuant to Rule 12(b)(2).

### B.   Diversity Jurisdiction With Respect to Plaintiffs' State-Law Claim

Having dismissed plaintiffs' claims under federal law, the Court examines next whether

there is federal diversity jurisdiction with respect to Chandra's and Knight's claims under the

NYFCA.  If not, the Court must consider whether to exercise supplemental jurisdiction over the

surviving state-law claims in this litigation, or decline to do so, in which event, after dismissal,

plaintiffs may pursue such claims in state court.  *See* 28 U.S.C. § 1367(a) ("[I]n any civil action

of which the district courts have original jurisdiction," federal courts can also exercise

supplemental jurisdiction over state law causes of action "that are so related to claims in the

action within such original jurisdiction that they form part of the same case or controversy.");

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.*

*Mgmt. Inc.*, 712 F.3d 705, 713 (2d Cir. 2013) (explaining that after a district court dismisses all

federal claims, it then decides whether "to exercise supplemental jurisdiction over the state-law

claims"); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual

case in which all federal-law claims are eliminated before trial, the balance of factors to be

considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

and comity—will point toward declining to exercise jurisdiction over the remaining state-law

claims.").

The subject-matter jurisdiction of the federal district courts is limited.  There is original

jurisdiction to hear state-law claims only when plaintiffs satisfy the requirements that 28 U.S.C.

§ 1332 sets for diversity jurisdiction: that plaintiffs and defendants be diverse and the amount in

controversy exceed the sum or value of $75,000.  *See Intelligen Power Sys., LLC v. dVentus*

*Techs. LLC*, 73 F. Supp. 3d 378, 380 (S.D.N.Y. 2014) (citing *Strawbridge v. Curtiss*, 7 U.S. 267,

267 (1806)).  Relevant here, "diversity is present when the action is between 'citizens of a State

and citizens or subjects of a foreign state,' 28 U.S.C. § 1332(a)(2), or between 'citizens of

different States and in which citizens or subjects of a foreign state are additional parties,' *id.*

§ 1332(a)(3)."  *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 580–81

(2d Cir. 2002).  "However, diversity is lacking within the meaning of these sections where the

only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *Id.* at 581.

The FAC states that the Court has diversity jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1332(a)(2) "because the matter in controversy exceeds $75,000 and is between citizens of a State and citizens of a foreign state who are not admitted for permanent residence in the United States and are not domiciled in that State." FAC ¶ 32. The FAC does not, however, plead compliance with § 1332(a)(2).

As to plaintiffs, the FAC pleads that Chandra and Knight are citizens of India and the United Kingdom, respectively. *Id.* ¶¶ 15, 19. As to defendants, as the Court has held, SCB is the only proper defendant here—the Court having dismissed, as improper defendants, SCB's Dubai and New York branches. And, the FAC pleads, SCB is a public limited liability company incorporated in England, with offices in London. SCB is not pled to be a citizen of the United States. *See Id.* ¶ 28 ("SCB UK is a public limited liability company incorporated in England, with offices in London, and is the headquarters of Standard Chartered PLC, a bank holding company and leading international banking institution. SCB UK is an indirect subsidiary of Standard Chartered PLC."). Thus, all parties are foreign citizens. And it is black-letter law that "diversity is lacking within the meaning of [§ 1332(a)(2)] where the only parties are foreign entities." *Universal Licensing Corp.*, 293 F.3d at 581; *see Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980) ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction."); *see also Mazaya Trading Co. v. Li & Fung Ltd.*, 833 F. App'x 841, 843 (2d Cir. 2020) (summary order); *F5 Cap. v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017).

### C.       Supplemental Jurisdiction

The Court therefore must consider whether to exercise, or decline, supplemental jurisdiction over the surviving state-law claims.  *See* 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

"In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."  *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998).  All factors favor declining jurisdiction here.  The Court here has dismissed the federal claims early in this action, on the pleadings, before discovery.  The Court therefore has not acquired familiarity with the facts and evidence and parties in the case.  And the surviving claims arise under a state law, the NYFCA, with which the state courts are presumed to have greater familiarity.  *See Pension Ben. Guar. Corp.*, 712 F.3d at 727 (where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims" (citation omitted)); *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) ("[T]he district court may also decide whether to exercise supplemental jurisdiction over this claim; it may determine that this area of law would benefit from further development in the state courts and therefore dismiss the claim without prejudice to refiling in state court."); *Marcus*, 138 F.3d at 57 ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").  The Court accordingly declines to exercise supplemental jurisdiction here over plaintiffs' state-law claims.

### CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss.  Plaintiffs' claims under the FCA are dismissed, without prejudice, for lack of personal jurisdiction.  The

Court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims, and dismisses these too, without prejudice.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 13, 18, 24, and 28, and to terminate this case.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 31, 2020
       New York, New York