UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *ex rel.* BRUTUS TRADING, LLC,

        Plaintiff,

    v.

STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, and STANDARD CHARTERED TRADE SERVICES CORPORATION,

        Defendants.

No. 18 Civ. 11117 (PAE)

**OPPOSITION TO RELATOR'S MOTION TO DISQUALIFY
GOVERNMENT COUNSEL**

 

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007

MÓNICA P. FOLCH
JEAN-DAVID BARNEA
Assistant United States Attorneys
   - Of Counsel -

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..............................................................................................................................2

      A.     Relator's FCA Claim Is Dismissed............................................................................2

      B.     Relator's Post-Dismissal Motions..............................................................................4

ARGUMENT ....................................................................................................................................5

I.     Legal Standard ......................................................................................................................5

II.    There Is No Basis to Disqualify AUSA Barnea as Counsel for the Government................6

CONCLUSION................................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Aquino v. Alexander Cap., LP*,
 No. 21-CV-1355 (JSR), 2021 WL 6427620 (S.D.N.Y. Dec. 21, 2021) .................................... 5

*Brutus Trading, LLC v. Standard Chartered Bank*,
 No. 20-2578, 2023 WL 5344973 (2d Cir. Aug. 21, 2023) ......................................................... 4

*Decker v. Nagel Rice LLC*,
 716 F. Supp. 2d 228 (S.D.N.Y. 2010) ...................................................................................... 6

*Giuffre v. Dershowitz*,
 410 F. Supp. 3d 564 (S.D.N.Y. 2019) ................................................................................ 5, 10

*Gormin v. Hubregsen*,
 No. 08 Civ. 7674(PGG), 2009 WL 508269 (S.D.N.Y. Feb. 27, 2009) ............................ 5, 7, 8

*Hirsch v. Rehs Galleries, Inc.*,
 No. 18 Civ. 11864 (VSB), 2020 WL 917213 (S.D.N.Y. Feb. 26, 2020) .................................. 6

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
 126 F. Supp. 3d 413 (S.D.N.Y. 2015) ...................................................................................... 6

*Murray v. Metropolitan Life Ins. Co.*,
 583 F.3d 173 (2d Cir. 2009) ..................................................................................................... 5

*Pagan v. C.I. Lobster Corp.*,
 549 F. Supp. 3d 356 (S.D.N.Y. 2021) ...................................................................................... 5

*Prout v. Vladeck*,
 316 F. Supp. 3d 784 (S.D.N.Y. 2018) ................................................................................ 5, 11

*Purgess v. Sharrock*,
 33 F.3d 134 (2d Cir. 1994) ....................................................................................................... 5

*Reyes v. Golden Krust Caribbean Bakery, Inc.*,
 No. 15 Civ. 7127 (DF), 2016 WL 4708953 (S.D.N.Y. Sept. 1, 2016) ..................................... 9

*Troika Media Grp., Inc. v. Stephenson*,
 No. 19 Civ. 145 (ER), 2019 WL 5587009 (S.D.N.Y. Oct. 30, 2019) ..................................... 10

***Statutes and Rules***

31 U.S.C. § 3729 .................................................................................................................... 2

Federal Rule of Civil Procedure 60(d)(3) ................................................................................ 4

Federal Rule of Civil Procedure 62.1 ...................................................................................... 3

**PRELIMINARY STATEMENT**

The United States of America (the "United States" or the "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in opposition to the motion of Relator Brutus Trading, LLC ("Relator"), to disqualify Assistant United States Attorney ("AUSA") Jean-David Barnea as counsel for the Government in this case, ECF No. 128 ("Disqualification Mot.").[1] This motion is entirely meritless and should be denied.

Relator's motion is based on the preposterous notion that Relator should be permitted to call AUSA Barnea as a witness to testify as to certain pre-complaint communications between a state agency and one of Relator's members, in which AUSA Barnea indisputably did not participate. As explained below, motions to disqualify an opponent's counsel on the basis that they will be a witness are extremely disfavored, because they are most often motivated by gamesmanship or worse. They may be granted only when, as relevant here, it is necessary for the moving party to call its opposing counsel as a witness at an imminent trial and the counsel will testify in a way that is substantially prejudicial to the interest of his client.

Relator's application satisfies none of these requirements. There is no upcoming trial (nor indeed the prospect of any trial in this case). And the supposed topic of testimony discussed in the motion is whether the Government's earlier submissions in this case failed to acknowledge communications between Relator and a state agency, the New York State Department of Financial Services ("DFS"), before Relator filed the *qui tam* complaint at issue—which are entirely irrelevant. (In any event, the Government's submissions did acknowledge these communications.) Relator thus cannot establish that any testimony by AUSA Barnea would be

---

[1] Relator previously filed this motion at ECF No. 119; this memorandum cites the latest filing.

necessary for Relator's case or substantially prejudicial to the Government. There is no basis for Relator's application to disqualify AUSA Barnea as counsel, and it should be denied, because, as the Court suspects, it "appears to be [a] transparent bid[] to delay this litigation by unnecessarily hampering the Government's response to the [Relator's] pending motion to vacate [the judgment]." ECF No. 120, at 1.

## BACKGROUND[2]

### A.    Relator's FCA Claim Is Dismissed

Relator filed its initial *qui tam* complaint in late 2012, shortly after the Department of Justice and several other federal and state agencies (including DFS) announced the settlement of criminal and administrative sanctions-related charges against Standard Chartered Bank ("SCB" or the "Bank"). Komar Decl., ECF No. 32, ¶¶ 6-8. Relator claimed that the Bank violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, by continuing to facilitate illegal transactions for its known Iranian clients even though it had promised U.S. authorities that such transactions ceased after 2007. Komar Decl. ¶¶ 8-9. The Government thoroughly investigated the Relator's claims but concluded that the transactions and client relationships Relator identified did not appear to violate sanctions rules or to substantiate Relator's allegation that SCB had defrauded the Government during the investigations that led to the 2012 resolutions. *Id.* ¶¶ 17-25; *see also* Supp. Komar Decl., ECF No. 55, ¶¶ 2-5; Manfull Decl., ECF No. 34, ¶ 37; Supp. Manfull Decl., ECF No. 57, ¶¶ 20-26.

---

[2] The procedural history of this case and the underlying government investigation is lengthy and was previously described in numerous declarations and briefs submitted in connection with the Government's motion to dismiss and the Relator's previous motion to set aside the judgment. The Government summarizes only those facts pertinent to the instant application and respectfully refers the Court to those briefs and declarations for more detail. This memorandum cites the declarations and briefs submitted in connection with the previous briefing as, for example, "\_\_\_\_\_ Decl." or "Gov't MTD Br.," with the docket number the first time each document is cited.

The Government then notified Relator it intended to decline to intervene in the case, but did not formally announce this decision while the agencies pursued an unrelated investigation of SCB. Komar Decl. ¶¶ 25, 31. After that investigation concluded in 2019, the Government moved to dismiss Relator's FCA claim on three grounds: that the Government's investigation had not corroborated Relator's factual allegations; that Relator's FCA legal theory was faulty; and that permitting Relator to continue to litigate its meritless claims against SCB would result in the unnecessary expenditure of government resources. Gov't MTD Br., ECF No. 31, at 20-30. Relator opposed the motion, arguing that the Government had not sufficiently investigated Relator's claims, and asserted that the Government's declarant investigators had not sufficiently examined the evidence Relator had submitted. Relator MTD Opp., ECF No. 49, at 5-6.[3] This Court granted the Government's motion and dismissed the claim, rejecting Relator's argument that the Government "failed to properly investigate its contentions or failed to understand the import of the evidence it provided," and concluding that "[Relator]'s subjective disagreement with the Government's investigative strategy and ultimate decision does not provide the Court with a basis to second-guess the Government's decision to dismiss the case." Opinion & Order, ECF No. 62, at 8.

After filing a notice of appeal, Relator moved this Court under Federal Rule of Civil Procedure 62.1 to set aside its judgment of dismissal based on what Relator characterized as newly discovered evidence that it claimed cast doubt on the veracity of the Government's declarations. ECF Nos. 67-68. This Court denied that motion, finding that the materials cited by Relator did not "contradict [the Government's] representations." Opinion & Order, ECF No. 97,

---

[3] Relator also sought leave of the Court to take the deposition of the former General Counsel of DFS, ECF No. 36, which the Government and DFS opposed, ECF Nos. 39, 40. The Court denied that application. Order, ECF No. 47.

3

at 11. The Second Circuit affirmed this Court's orders, holding that Relator had "failed to show that the government's investigation was inadequate, that its decision to dismiss the case was unreasonable, or that its decision was based on arbitrary or improper considerations." *Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 WL 5344973, at *3 (2d Cir. Aug. 21, 2023). The U.S. Supreme Court denied Relator's petition for certiorari. 144 S. Ct. 1011 (Feb. 26, 2024).

### B. Relator's Post-Dismissal Motions

Since the dismissal of its *qui tam* complaint was upheld, Relator has sought to reopen the case yet again. Relator recently filed a motion under Federal Rule of Civil Procedure 60(d)(3) falsely suggesting that the Government committed fraud on the Court in describing the scope and conclusions of its investigation into Relator's FCA claims, ECF Nos. 101-05, and a motion asking the Court to appoint a neutral expert at the Government's expense to review certain SCB documents that Relator provided the Government during that investigation, more than a decade ago, ECF Nos. 122-26.

Relator also filed the instant motion seeking to disqualify AUSA Barnea, who has represented the Government since the original *qui tam* complaint was filed. The basis for Relator's motion is its unfounded claim that AUSA Barnea engaged in "misconduct" by submitting what Relator characterizes as "false and misleading information to the Court" in connection with the prior motion practice. Disqualification Mot. at 1-2. This supposed misleading information relates to communications between Relator and DFS before Relator filed its *qui tam* complaint, which—according to Relator—the Government did not acknowledge in its prior submissions. *Id.* at 6-8. Although the Court indicated its "doubt[]" that Relator could meet the "high standard of proof" required to prevail in such a motion—and found that Relator's application seemed to be a "transparent bid[] to delay this litigation"—it directed the parties to

4

brief this motion before turning to Relator's other recent applications. ECF No. 120, at 1 (internal quotation marks omitted).

## ARGUMENT

### I. Legal Standard

Relator's instant motion is based on the so-called "advocate-witness rule," Mot. at 5, which "prohibits an attorney from representing a party where the attorney will be called as a witness," *Giuffre v. Dershowitz*, 410 F. Supp. 3d 564, 578 (S.D.N.Y. 2019). "'Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to strict scrutiny, particularly motions' under the witness advocate rule." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018) (quoting *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)); *accord Pagan v. C.I. Lobster Corp.*, 549 F. Supp. 3d 356, 359 (S.D.N.Y. 2021) ("Generally, disqualification motions are disfavored, as they are often interposed for tactical reasons, and even when made in the best of faith, such motions inevitably cause delay." (internal quotation marks and ellipses omitted)); *Powell v. Nall*, No. 17-CV-4200 (RJS), 2018 WL 10323055, at *2 (S.D.N.Y. June 20, 2018) ("[D]isqualification based on the advocate-witness rule" is "subject to strict scrutiny because of the strong potential for abuse to stall and derail the proceedings, redounding to the strategic advantage of one party over another." (internal quotation marks omitted)). The "party seeking disqualification must bear a heavy burden of proof in order to prevail, and mere speculation will not suffice." *Gormin v. Hubregsen*, No. 08 Civ. 7674(PGG), 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009). Such motions are "committed to the discretion of the district court." *Aquino v. Alexander Cap., LP*, No. 21-CV-1355 (JSR), 2021 WL 6427620, at *1 (S.D.N.Y. Dec. 21, 2021) (citing *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)).

The principal requirement for such a motion is that the counsel sought to be disqualified "would need to testify at trial"—as opposed to in any pre-trial proceedings. *Savor Health, LLC v. Day*, No. 19-CV-9798 (RA) (JW), 2023 WL 2810743, at *2 (S.D.N.Y. Apr. 6, 2023) (collecting cases). "When a party seeks to disqualify counsel under the advocate-witness rule, the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact require his testimony." *Hirsch v. Rehs Galleries, Inc.*, No. 18 Civ. 11864 (VSB), 2020 WL 917213, at *6 (S.D.N.Y. Feb. 26, 2020) (internal quotation marks omitted). Where "only the moving party intends to call the adversary's attorney as a witness, the movant must demonstrate both that the lawyer's testimony is 'necessary'" to the *movant's* case "and that there exists a substantial likelihood that the testimony would be prejudicial to *the witness-advocate's client*." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 420 (S.D.N.Y. 2015) (emphasis added). "Prejudice in this context means testimony that is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 232 (S.D.N.Y. 2010) (internal quotation marks omitted).

II.     **There Is No Basis to Disqualify AUSA Barnea as Counsel for the Government**

Unsurprisingly, Relator's disqualification motion fails at every single step of the required analysis. As a preliminary but conclusive matter, there is no trial or even upcoming prospect of trial in this case—the case has been dismissed, the dismissal has been affirmed on appeal, and Relator is now pursuing a farfetched motion to set aside the judgment based on meritless accusations that the Government committed fraud on the Court. A motion seeking disqualification under the advocate-witness rule is thus not even appropriately sought at this juncture. "[T]he key to the disqualification inquiry is whether the advocate-witness would need

6

to testify *at trial*." *Savor Health*, 2023 WL 2810743, at *2 (emphasis in original) (collecting cases). Courts "commonly deny disqualification motions" simply because "it is impossible to determine" at the time the motion is made whether the attorney at issue "is likely even to be called at a witness" at an eventual trial. *Gormin v. Hubregsen*, No. No. 08 Civ. 7674 (PGG), 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009).

Even if a trial were imminent, Relator has come nowhere near establishing that the testimony of AUSA Barnea would be "necessary" to its case. Supposing *arguendo* that the Court was about to hold a trial regarding the accusations of fraud on the court in Relator's latest submission, Relator does not explain why it would need AUSA Barnea to testify at such a trial about Relator's irrelevant pre-complaint communications with DFS. Relator's Rule 60(d)(3) motion accuses the Government of not reviewing in sufficient detail certain SCB spreadsheets containing Bank transaction data that Relator provided to the Government after filing its *qui tam* complaint. ECF No. 102, at 14-16. Whether Relator had pre-complaint communications with DFS (not a federal agency, and thus not represented by AUSA Barnea), or whether DFS took preliminary investigative steps before the complaint was filed, has no relevance to the allegations in Relator's Rule 60(d)(3) motion. *See* Mot. at 2-4.

Relatedly, and critically, Relator makes it seem as though the Government—and AUSA Barnea in particular—deliberately kept the fact of Relator's pre-complaint discussions with DFS from the Court, for an unspecified nefarious reason. This, too, is completely false. The Government was generally aware that Robert Marcellus, one of the members of the Relator entity, had discussions with both DFS and the U.S. Department of Treasury's Office of Foreign Asset Control ("OFAC") before filing the *qui tam* complaint. Indeed, the Government included this background information in its submissions to the Court. Matthew Komar, the principal

7

Federal Bureau of Investigation ("FBI") agent assigned to investigate Relator's claims, averred that a January 16, 2013, multiagency interview "was the only time, of which I am aware, that the Government formally interviewed Messrs. Knight and Marcellus [Relator's members] in this matter, *although I am told that Mr. Marcellus communicated with representatives of DFS and OFAC (separately) to provide a preview of the allegations in Relator's qui tam complaint before it was filed*." 3d Supp. Komar Decl., ECF No. 87, ¶ 6 (emphasis added). OFAC's declarant, in turn, provided the Court with a detailed description of that agency's pre-complaint discussions with Mr. Marcellus. Manfull Decl., ECF No. 34, ¶¶ 28-31; *see also* 3d Supp. Manfull Decl., ECF No. 88, ¶¶ 14-18 (explaining that Mr. Marcellus attached to a declaration to this Court a materially altered version of a pre-complaint email he had sent to OFAC).

Relator seeks to fabricate inconsistencies with other submissions that do not specifically mention these irrelevant pre-complaint communications. Mot. at 3-4, 6-8. Relator also calls into question the accuracy of statements that the Government began its investigation only after the *qui tam* complaint was filed, but do not mention that DFS and OFAC took certain preliminary investigative steps beforehand. *Id.* These concerns are all misplaced. Agent Komar explained in his declaration that, after the *qui tam* complaint was filed, the Government shared the complaint and accompanying materials with several other agencies that then began their "parallel investigations." Komar Decl. ¶ 11. But this statement is not inconsistent with some of those agencies having been aware of Relator's allegations, or having taken certain preliminary steps, before then. And the Government's opposition to Relator's motion to depose the former DFS General Counsel correctly indicated that DFS ultimately took no administrative action against

8

SCB after investigating Relator's claims alongside the Government. ECF No. 40, at 3.[4] This statement is not in tension with DFS's pre-complaint discussions with Mr. Marcellus and request for information from the Bank. Finally, the statement by DFS's declarant—who "was not personally involved in the review of relator's claims," Nochlin Decl. ¶ 20—that "[a]s far as [she] kn[e]w, [DFS] did not obtain any documents that were not also obtained by DOJ, nor did [DFS] interview any witnesses other than together with DOJ," *id.* ¶ 8, is also far from problematic. There is no indication that DFS formally interviewed Mr. Marcellus—as opposed to informally communicated by email and telephone with him—before (or after) the multiagency interview in January 2013, or that he provided DFS with any Bank documents that Relator did not also provide the Government a few weeks later.

Regardless, as relevant to the instant motion, Relator does not explain why the testimony of AUSA Barnea in particular would be "necessary" to resolve any inconsistencies, real or imagined, in these statements. If, for some reason, it was necessary at a trial in this case to ask Government declarants what they knew about Mr. Marcellus's pre-complaint communications with DFS, Relator could question the declarants directly about those communications. If some of the declarants were unaware of the communications, they could be shown testimony from Mr. Marcellus or other participants, or relevant emails and documents. The testimony of AUSA Barnea, who did not participate in any of the communications at issue (between DFS and Mr. Marcellus), would be entirely unnecessary. *See Reyes v. Golden Krust Caribbean Bakery, Inc.*, No. 15 Civ. 7127 (DF), 2016 WL 4708953, at *11 (S.D.N.Y. Sept. 1, 2016) ("[C]ourts deem a

---

[4] *Accord* Nochlin Decl., ECF No. 58, ¶ 20 ("I understand that [DFS] staff undertook a thorough review of the information provided by relator at the time it was produced. I understand, however, that [DFS] was unable to verify the allegations made by relator and *took no enforcement action against SCB arising out of the information provided by relator*." (emphasis added)).

9

lawyer's testimony necessary only if there are no other witnesses to the circumstances at issue. Where an attorney's testimony would be cumulative or corroborative of that provided by other witnesses, the testimony cannot be said to be necessary, and disqualification is inappropriate." (internal quotation marks, citations, and brackets omitted)).

Finally, even if Relator could somehow establish that AUSA Barnea's testimony was necessary for Relator's case at an imminent trial, the disqualification motion would further fail because Relator has not established that such testimony would be *prejudicial to the Government*. There would be nothing prejudicial to the Government—in defending against Relator's entirely unrelated claims of fraud on the court or otherwise—if AUSA Barnea were to acknowledge the undisputed facts that Mr. Marcellus communicated with DFS (a state agency) before Relator filed its *qui tam* complaint, and that DFS sent an information request to SCB shortly before the Government sent the Bank its own request.

The cases Relator cite only demonstrate how far short Relator falls from establishing a basis for disqualification. In one of those cases, a law firm was disqualified both because it had simultaneously represented both parties to a lawsuit (on different matters), and also because the attorneys themselves were allegedly personally involved in the defendants' wrongful conduct. *Troika Media Grp., Inc. v. Stephenson*, No. 19 Civ. 145 (ER), 2019 WL 5587009, at *7 (S.D.N.Y. Oct. 30, 2019) ("The gravamen of [plaintiff's] complaint directly implicates the behavior of [the law firm] . . . ."). In another case, the defendant had accused the plaintiff (pre-complaint) of conspiring with her attorneys to extort him, and the plaintiff's later complaint (filed by the same counsel) pleaded that the defendant's conspiracy accusation was defamatory. *See Giuffre*, 410 F. Supp. 3d at 579. This put squarely at issue the truth or falsity of this accusation, rendering the plaintiff's attorney an indispensable fact witness. *See id.*

10

Ultimately, Relator's meritless disqualification motion was, at best, interposed for "tactical" reasons, *Prout*, 316 F. Supp. 3d at 809, and demonstrate why courts consider such motions to have a "strong potential for abuse," *Powell*, 2018 WL 10323055, at *2. Following a long history of Relator's other baseless accusations of fraud and misconduct against the Government and its declarants, all but the latest of which have already been rejected by this Court, the instant application should be summarily denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Relator's motion to disqualify AUSA Barnea from continuing to represent the Government in this case.

Dated:   New York, New York
         July 15, 2024

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney for the
                              Southern District of New York

                         By:   s/Mónica P. Folch
                              MÓNICA P. FOLCH
                              JEAN-DAVID BARNEA
                              Assistant United States Attorneys
                              86 Chambers Street, Third Floor
                              New York, New York 10007
                              Tel.: (212) 637-6559/2679
                              Email: Monica.Folch@usdoj.gov
                                     Jean-David.Barnea@usdoj.gov